IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Brian J. Reilly,

    Plaintiff,

v.

Domenick Meffe, et al,

    Defendants.

Case No. 2:13-cv-372

Judge Graham

Magistrate Judge Kemp

**OPINION AND ORDER**

This matter is before the Court on the Plaintiff's Motion for Summary Judgment (doc. 61). For the reasons that follow, the Court will DENY the Plaintiff's Motion.

I.     Background

The Plaintiff, Brian Reilly, is the managing member of Transact Partners (Transact), a mergers and acquisitions advisory firm. Reilly Dep. at 8, doc. 62. The Defendant, Richard Hoffman, is a principal in Wellington Resource Group (Wellington), a corporation involved in the buying and selling of oil and gas leases. Meffe Dep. at 16, doc. 60. The Defendant operated Wellington with a long-time business associate, Domenick Meffe, a former party in the instant action.[1] Id. at 16–17. Transact and Wellington are not parties in the present case.

In early 2011, Wellington was engaged to market certain assets of Beck Energy Corporation. Id. at 45. Wellington and Transact subsequently executed a co-brokerage agreement that guaranteed Transact 2% of the purchase price of the Beck Energy assets if Transact secured a successful buyer of those assets. Co-Brokerage Agreement, doc. 18–1. While working together

---

[1] The Plaintiff and Meffe filed a Stipulation of Voluntary Dismissal (doc. 68) on January 27, 2015. Pursuant to the Stipulation, the Plaintiff and Meffe agreed to voluntarily dismiss all claims and affirmative defenses against one another. The Plaintiff and the Defendant retained the right to pursue any and all claims and affirmative defenses against one another.

on the sale of the Beck Energy assets, the Plaintiff exchanged industry information and contacts with the Defendant and Meffe. Meffe Dep. at 50–51.

Subsequent to the sale of the Beck Energy assets, the parties (the Plaintiff, the Defendant, and Meffe) developed a business relationship, the precise nature of which is disputed. On May 31, 2011, Meffe emailed the Plaintiff and the Defendant, stating, "Bryan [the Plaintiff], list of names which you will need to understand the map. Should we have an agreement between our respective companies?" Doc. 60-1 at 1. The Plaintiff responded, "Dom, Rick [the Defendant]: This e-mail is to confirm our understanding that we intend to split the profits on this transaction (Jefferson County leases) equally 3 ways between us – Thanks – Brian." Id. at 2.

The parties offer competing narratives as to what actually occurred on May 31st. In the Plaintiff's version of events is as follows: after receiving Meffe's email, the parties spoke by telephone and orally agreed to form a partnership; the Plaintiff's subsequent email confirmed the parties' agreement, which they modified over time; although originally the partnership agreement was limited to the Jefferson County leases mentioned in the email, the parties orally agreed to work together as individuals to buy and sell oil and gas leases and split the profits from any deals they worked on together; and despite using their respective corporate entities to execute these deals, the partnership agreement was between the parties as individuals.

In contrast, the Defendant maintains that: any agreement to split profits between the parties was limited to the transaction concerning the Jefferson County leases; there was no partnership agreement among the parties as individuals; and any further dealings between the parties were between their corporate entities in which the Plaintiff and Transact acted as a broker and not a partner.

Throughout the summer and fall of 2011, the parties worked together on a number of oil and gas deals. One of those deals, the Massey transaction, is the main source of dispute in this case. The Massey transaction involved the procurement and sale of leases for 4,400 acres of oil and gas rights in Monroe County. In July 2011, the Plaintiff contacted Virginia Markley, at XTO/Exxon, the ultimate buyer of the Massey leases, and emailed her maps of the relevant acreage. Reilly Dep. at 117.

Over the course of the fall of 2011, the business relationship between the Plaintiff, the Defendant, and Meffe deteriorated. The Defendant cut off communication with the Plaintiff in November 2011. Id. at 100. The next month, the Defendant and Meffe, through Wellington, sold the Massey leases to Exxon for $15,544,907.12. Massey Transaction Closing Statement, doc. 61-4. The Plaintiff did not learn of the sale until January 2012, Reilly Dep. at 112, and did not receive any proceeds from the Massey transaction, Meffe Dep. at 230.

On July 29, 2013, the Plaintiff filed a six-count Complaint (doc. 2) against the Defendant and Meffe alleging: (1) Breach of Contract; (2) Breach of Fiduciary Duty; (3) Conversion; (4) Intentional and/or Fraudulent Nondisclosure; (5) Unjust Enrichment; and (6) Accounting. The Plaintiff's Motion for Summary Judgment is fully briefed and ripe for ruling.

**II.     Standard of Review**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary material in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law,

3

which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

### III. Discussion

In his Motion, the Plaintiff does not specify on which claims he seeks summary judgment. In his briefs and at oral argument, the Plaintiff argued that he was entitled to summary judgment as to the issue of whether the parties formed a partnership. Because the Plaintiff does not identify relevant evidence and case law that would entitle him to summary judgment on any other claim, the Court's analysis is limited to a determination of whether the parties formed a partnership agreement.

A. *Applicable Law*

In his Response, the Defendant raises a conflict of laws issue, asserting that, pursuant to Ohio Revised Code § 1776.06(A), the Court should apply Pennsylvania law in determining whether the parties formed a partnership. Def.'s Resp. in Opp at 15–17, doc. 64. In reply, the Plaintiff does not directly address the Defendant's argument, but implicitly argues that the Court should apply Ohio law in this case. See Pl.'s Resp. in Opp. at 7– 9, doc. 67 (citing Ohio law throughout and stating in passing that "plaintiff has indeed met his burden to prove a partnership existed under the relevant law of Ohio").

In its Opinion and Order (doc. 32) denying the Defendant and Meffe's Motion to Dismiss, the Court applied Ohio law in evaluating the Plaintiff's partnership claim, explaining:

> Federal courts sitting in diversity generally apply federal procedural rules and the substantive law of the forum state. When neither party raises a conflict of law issue in a diversity case, a federal court applies the law of the forum state. Here, neither party raises conflict of law questions concerning the Plaintiff's partnership claims. Instead, both parties cite and apply Ohio law as controlling the resolution of the Plaintiff's partnership claims. The Court will therefore apply Ohio law in this case.

5

Op. & Order at 12–13, doc. 32 (internal citations and quotations omitted).[2] The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona. v. California, 460 U.S. 605, 618 (1983). Consequently, a court should avoid reconsideration of those issues unless: "(1) substantially different evidence is raised on subsequent trial; (2) . . . a subsequent contrary view of the law is decided by the controlling authority; or (3) . . . a decision is clearly erroneous and would work a manifest injustice." Hanover Ins. Co. v. Am. Eng'g Co., 105 F.3d 306, 312 (6th Cir. 1997) (citations omitted). The Defendant does not identify different evidence or subsequent controlling authority that compels reconsideration of the Court's earlier analysis. Nor has the Defendant made an effort to demonstrate that the Court's decision to apply Ohio law was clearly erroneous and would work a manifest injustice in this instance.

Ultimately, regardless of which State's law is applied, the result of the Plaintiff's Motion for Summary Judgment would be the same. At oral argument, the Defendant conceded this point. The Defendant will therefore not be prejudiced by the application of Ohio law in this case, and the Court will apply it accordingly.

B.   *Partnership Claim*

Under Ohio law, a partnership is "an association of two or more persons to carry on as co-owners a business for-profit formed under section 1776.22 of the Revised Code, a predecessor law, or a comparable law of another jurisdiction." Ohio Rev. Code § 1776.01(M).

---

[2] Because he did not raise a conflict of law argument in his motion to dismiss and relied solely on Ohio law in that motion, the Defendant arguably waived his right to raise a conflict of law issue at this late stage in the litigation. See Lott v. Levitt, 556 F.3d 564, 567–68 (7th Cir. 2009); PI, Inc. v. Ogle, 932 F. Supp. 80, 82 (S.D.N.Y. 1996) (holding that previous decision denying defendant's motion to dismiss was the law of the case and barred defendant from bringing motion again, even though defendant argued in second motion that law of another state applied to action; neither party had raised conflicts of law issue on prior motion, and thus law of forum was deemed to apply and any conflicts of law issue was deemed waived).

Section 1776.22 provides "any association of two or more persons to carry on as co-owners a business for-profit forms a partnership, whether or not the persons intend to form a partnership." Ohio Rev. Code § 1776.22(A). A partnership agreement is "[an] agreement among the partners concerning the partnership, whether written, oral, or implied." Ohio Rev. Code § 1776.01(N).

Courts consider a number of factors in determining the existence of a partnership, including: the sharing of profits, "the existence of a written or oral partnership agreement; the joint ownership and control of property; the ability of members to bind the business entity; and the nature of the tax returns filed by the business entity." In re Estate of Ivanchak, 862 N.E.2d 151, 155 (Ohio Ct. App. 2006). However, "'[s]ince every business relationship is unique, no single fact or circumstance can operate as a conclusive test for the existence of a partnership,' particularly when the parties have dealt casually with each other." Id. (quoting In re Estate of Nuss, 646 N.E.2d 504, 507 (Ohio 1994)).

The record contains conflicting evidence concerning the nature of the parties' business relationship. The Plaintiff's deposition testimony supports his position that the parties formed a partnership as individuals in which they agreed to buy and sell oil and gas leases and split the profits from any transactions they worked on together three ways. The Plaintiff testified that the parties orally agreed to this arrangement on May 31 during a conference call. Reilly Dep. at 42. According to the Plaintiff, during this conference call, the Defendant explained that he and Meffe wanted to work on deals other than Beck and outside of Wellington with the Plaintiff. Id. at 46. The Defendant proposed a three way split on any deals the parties worked on together. Id. at 48. The Plaintiff subsequently sent the May 31st email to confirm the parties' agreement. Id. at 49. According to the Plaintiff, the parties orally refined the partnership agreement over time. Id. After working together to sell the Jefferson County leases discussed in the May 31st email, the

7

Plaintiff asked the Defendant about continuing with the same three way split on any other deals the parties worked on together. Id. at 185. The Defendant agreed to the continuation of the agreement on those terms. Id. at 185.

In the Plaintiff's view, the parties' conduct over the course of 2011 supports the existence of a partnership agreement among the parties. The Plaintiff visited the Defendant and Meffe in person on multiple occasions to discuss partnership business. Id. at 53, 71, 107. At partnership meetings the parties agreed that they would split the profits on any deal they worked on together. Id. at 61. The parties had biweekly conference calls to discuss potential deals and partnership business. Id. at 107. During the in-person meetings and conference calls, the Defendant would frequently calculate commissions from potential deals and how they would be split three ways between the parties. Id. at 185. The parties successfully completed the sale of oil and gas leases near the City of Girard and split the profits from that sale three ways. Id. at 106.

With respect to the Massey transaction at the heart of this case, the Plaintiff testified that he brought the ultimate buyer to the partnership. According to him, he contacted Virginia Markley at XTO/Exxon, presented her information regarding the Massey leases, spoke to her on a regular basis about the deal, and arranged a meeting between her and Meffe. Id. at 85–95, 98, 109–10.

The Plaintiff's version of events supports the existence of "an association of two or more persons to carry on as co-owners a business for-profit," Ohio Rev. Code § 1776.01(M). According to the Plaintiff, the parties formed an oral partnership agreement in May 2011, and he worked on behalf of that partnership throughout the summer and fall of 2011, marketing deals to various oil and gas companies and securing letters of intent from those companies for the benefit of the partnership. These facts, if proved, would support the existence of a partnership between

8

the parties. See Ivanchak, 862 N.E.2d at 155 (factors to be considered in determining the existence of a partnership include "the existence of a[n] . . . oral partnership agreement . . . [and] the ability of members to bind the business entity"). Moreover, the parties split the profits on the City of Girard deal, which according to the Plaintiff was a partnership deal. "A person who receives a share of the profits of a business is presumed to be a partner in the business[.]" Ohio Rev. Code § 1776.22(C)(3).

However, the record also contains significant evidence that supports the Defendant's version of events. In the Defendant's account, the Plaintiff was a broker, rather than a partner. Hoffman Dep. at 39; Meffe Dep. at 51, 59–60, 77. As a broker, the Plaintiff worked to secure a buyer for oil and gas leases owned by Wellington. Meffe Dep. at 80. If the Plaintiff successfully secured a buyer for oil and gas leases owned by Wellington, the Defendant and Meffe would pay him an "appropriate commission" for his role as a broker. Id. According to the Defendant, the parties never agreed to form a partnership. Hoffman Dep. at 38–39.

With respect to the alleged partnership, the record demonstrates that the partnership: did not have a bank account or office; did not own any property; and did not file any partnership tax returns. Meffe Dep. at 277–78. Further, the Defendant and Meffe never represented that the Plaintiff was their partner, id. at 277, and the Plaintiff never contributed any capital to any alleged partnership deals. Id. The only deals the party agreed to split the proceeds on were those deals involving the sale of oil and gas leases to Carrizo Oil & Gas, Inc. Hoffman Dep. at 40–41.

With respect to the Massey transaction, the Defendant maintains that it was a Wellington deal and that the Plaintiff had little involvement other than trying to find a buyer for the Massey assets. Hoffman Dep. at 40–41, 47. Wellington would have compensated the Plaintiff for his work as a broker if he had secured a buyer for the Massey assets. Meffe Dep. at 229–30.

9

However, another broker secured XTO/Exxon as the buyer of the Massey assets, id. at 237, and, therefore, the Defendant and Meffe did not pay the Plaintiff, id. at 148, 229–30. No other agreement between the parties existed with respect to the Massey transaction. Id. at 230.

In the Defendant's version of events, the parties never agreed orally or in writing to form a partnership. Instead, the Plaintiff acted as one of many brokers that worked with the Defendant and Meffe to market oil and gas leases owned by Wellington to potential buyers. The parties did not own any property together, did not have a partnership bank account, and did not file partnership tax returns. These facts are inconsistent with the existence of a partnership between the parties. See Ivanchak, 862 N.E.2d at 155 (factors to be considered in determining the existence of a partnership include "the existence of a written or oral partnership agreement; the joint ownership and control of property; . . . and the nature of the tax returns filed by the business entity"). To the extent the parties agreed to split profits from the sale of oil and gas leases to Carrizo Oil & Gas, Inc, including the City of Girard transaction, that agreement is more consistent with a limited joint venture than an ongoing partnership. See Al Johnson Const. Co. v. Kosydar, N.E.2d 549, 552 (Ohio 1975) (defining a joint venture as "an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers" (quoting Ford v. McCue, 127 N.E.2d 209 (Ohio 1955))).

"'Since every business relationship is unique, no single fact or circumstance can operate as a conclusive test for the existence of a partnership,' particularly when the parties have dealt

casually with each other." Ivanchak, 862 N.E.2d at 155 (quoting Nuss, 646 N.E.2d at 507). Here, there is no question that "the parties have dealt casually with each other," Ivanchak, 862 N.E.2d at 155 (quoting Nuss, 646 N.E.2d at 507). As demonstrated above, the record contains conflicting deposition testimony concerning the basic facts of whether a partnership was formed in this case. That evidence amounts to essentially a credibility contest between the parties. And the only written evidence of an agreement between the parties is the May 31, 2011 email, which is subject to interpretation. Consequently, a jury, and not the Court, must resolve the factual disputes between the parties. The Court will deny the Plaintiff's Motion for Summary Judgment accordingly.

**IV.   Conclusion**

For the foregoing reasons, the Court DENIES the Plaintiff's Motion for Summary Judgment (doc. 61).

Having resolved the Plaintiff's Motion for Summary Judgment, the Honorable Judge James L. Graham hereby recuses himself from the above-styled case. The case is to be transferred back to the unassigned docket, and redrawn for assignment.

IT IS SO ORDERED.

S/ James L  Graham
James L. Graham
UNITED STATES DISTRICT JUDGE

Date: May 12, 2015